CASE 113—PETITION ORDINARY—FEBRUARY 19.

# Louisville & Nashville Railroad Co. v. McElwain.

### APPEAL FROM TODD CIRCUIT COURT.

BAR.—A recovery by the husband as personal representative under section 1 of chapter 57, General Statutes, for the killing of his wife by the negligence of a railroad company, is a bar to an action by him as husband to recover damages for the loss of the wife's society from the time of the injury until her death, for which the common law gave a right of action.

BEN T. PERKINS, JR., FOR APPELLANT.

The judgment in the action by the husband to recover for the mental and physical suffering of the wife is a bar to this action by him to recover for the loss of her society. (Conner's Adm'r v. Paul, 12 Bush, 145; Hansford's Adm'r v. Payne & Co., 11 Bush, 385.)

FORGY & PETRIE FOR APPELLEE.

In this suit a new cause of action, which could not have been litigated in the former suit, is presented by a new party, and therefore the judgment in the former suit is not a bar. (Hansford's Adm'r v. Payne & Co., 11 Bush, 384.)

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

On the 8th day of October, 1892, a freight train on appellant's road struck Josephine E. McElwain while she was crossing the track at a public road crossing, inflicting injuries from which she died on the 23d day of December, 1892. T. W. McElwain, the plaintiff in this case, qualified as executor of her will, instituted an action as such personal representative and recovered a judgment against the defendant for the sum of five thousand dollars. This action was instituted at the same time by the plaintiff as the husband of the deceased seeking to recover in his individual capacity

damages for the "loss of her society" from the date the injury was inflicted until her death.

In the action as personal representative he recovered compensatory damages, under the instructions of the court, for physical and mental suffering, for expenses of treatment and for the permanent impairment of her ability to earn money, etc.

The sole question in this case is as to whether the recovery in the action as personal representative of the estate of the deceased is a bar to the husband's right to recover for a loss for which it is claimed the common law afforded him redress.

To determine this question the common law must be considered in connection with the statutory remedy afforded for the negligent acts resulting in death.

By the principle of the common law the right of action for an injury to the person abates upon the death of the party injured, the case falling within the familiar rule, *actio personalis moritur cum persona.* Therefore, if death resulted, whether instantaneously or not, from such injury, no action could be maintained by the personal representative of the injured party to recover damages suffered by the decedent.

As early as 1606 in the King's Bench, the case of Higgins v. Butcher, Yelv., 89, arose, wherein the plaintiff sought to recover damages of the defendant for assaulting and beating his wife, of which she died. The action seemed to have been for damages to the wife and not for the loss of service. It was held there could be no recovery, as the injury, having resulted in death, the cause of action therefor was merged in the felony. It might be added at this point that reasons other than merger have been suggested for the rule, to-wit, the law of forfeiture, the maxim, *actio personalis moritur cum persona,* and public policy.

From the case of Higgins v. Butcher, the question does not appear to have been raised in England until 1808, in Baker v. Bolton, 1 Campbell, 493. That was an action against the proprietors of a stagecoach on which the plaintiff and his wife were traveling, when it was overturned, inflicting injuries on himself and also upon his wife, from which she died within a month. It was declared that "the plaintiff had wholly lost and been deprived of the comfort, fellowship and assistance of his said wife, and had from thence hitherto suffered and undergone great grief, vexation and anguish of mind." Lord Ellenborough said: "The jury could only take into consideration the bruises which the plaintiff had himself sustained, and the loss of his wife's society and the distress of mind he had suffered on her account from the time of the accident till the moment of her dissolution."

The above is the opinion in full. Although the case was at *nisi prius* it is the leading case on the subject. It was recognized as the law in England until the enactment of the statute familiarly known as "Lord Campbell's Act," in 1846. Until the passage of that act the law was recognized to be that "in a civil court, the death of a human being could not be complained of as an injury."

Formed after "Lord Campbell's Act," nearly, if not all, the States of the Union have enacted statutes making an action at law maintainable against a person who by wrongful act, neglect or default may have caused the death of another.

The courts of this country, with one or two exceptions, accepted Baker v. Bolton as authority, until the enactment of the statutes to which we have just referred.

Carey & wife v. The Berkshire Railroad Co., &c., 1 Cushing, 475, follows Baker v. Bolton, and is a leading case upon the subject.

The question arose in this court in 1853, in Eden v. Lexing-

ton & Frankfort R. R. Company, 14 B. Mon., 204 [165], before the enactment of the statute. That was an action by the husband against a railroad company for the alleged negligent killing of his wife. She was killed instantly. The court followed the principle enunciated in Baker v. Bolton, but erroneously assumed that it was decided in that case that when death resulted, the civil remedy was merged in the public offense.

The court said in the Eden case: "The cause of action for injuries to the person dies with the person injured and it follows as a necessary consequence, that the cause of action having itself abated no separate action can be maintained for such damages as are exclusively consequential. But for aggravated injuries to the person of the wife or child the husband or parent has an independent and separate cause of action for the loss of society of the wife, or the services of the child, as the case may be. This cause of action does not abate by the subsequent death of the wife or child, but the death of either affects the extent of the recovery, as by that event all further claim to the society of the one, or the services of the other, ceases and determines. And the rule still prevails, although the death that produces this effect results from the same injury which gives rise to the action.

＊　　　＊　　　＊　　　＊　　　＊　　　＊

"According to the existing law, there can be no recovery for this injury, inasmuch as the death of the wife was instantaneous, and it is only for the loss that is sustained by the husband, in this respect, from the moment of the injury up to time of the death of the wife, for which any recovery can be had."

The death resulting immediately on the infliction of the injuries no appreciable time elapsed in which the husband

could have enjoyed his wife's society, hence no damage could result.

It is perfectly manifest that at the common law a husband could recover damages for the loss of her society from the date of the injury until her death for a negligent act resulting in the injury of his wife, although she died therefrom.

The question here arises as to what effect the statute providing a remedy for injuries to the person by negligence has upon the right of the husband to maintain an action for such injuries for which the common law afforded him redress.

At the common law, although the person injured may have suffered great physical and mental pain the cause of action was abated by his death. The General Assembly, in order to preserve and keep alive such cause of action provided that, every right of action for personal injury, except actions for assault and battery, slander, criminal conversation, and so much of the action for criminal prosecution as is intended to recover for personal injury, shall survive to the personal representative. (Ch. 10, Gen. Stats.) [Ky. Stats., sec 10.]

To provide a cause of action where none existed the statute of 1854 was enacted, which gave a cause of action to the personal representative of one not in the employment of the railroad, whose life was lost by reason of the negligence or carelessness of the servants or agents, etc., of such railroad. A recovery under section 1, chapter 57, General Statutes, goes to the estate of the decedent.

This was the section under which the plaintiff as personal representative of the estate of his deceased wife recovered in the other action mentioned.

Counsel for appellees cite Hansford's Adm'x v. Payne & Co., 11 Bush, 380, to sustain the contention that this action can be maintained, while counsel for appellants cite the

case of Conners' Adm'x v. Paul, 12 Bush, 144, in support of the opposing view.

Hansford's case was not under either section 1 or 3, chapter 57, General Statutes. The petition did not charge the life was lost by the willful neglect of the defendants, hence was not under section 3; and as it was not lost by reason of the negligence or carelessness of the proprietor of a railroad or its agents or servants the action could not be and was not intended to be under section 1.

It was an action against apothecaries, because their prescription clerk in attempting to fill a physician's prescription put up croton oil instead of linseed oil. The croton oil was administered to plaintiff's intestate. It was charged, among other things in the petition, that it caused him great suffering and agony and did him serious and irreparable injury, and was the immediate cause of his death.

The action was brought by decedent's personal representative. At common law had the deceased lived, he could have maintained the action for the agony and suffering, resulting from the clerk's mistake, and at his death the cause of action would have ceased, except for chapter 10, General Statutes, *supra*, which caused it to survive in the name of his personal representative. For this reason the court in that case held the petition was good, Under the statements of the petition no recovery could be had for the death of the injured party.

It was not in issue in the case as to what the rights of a husband were when his wife lost her life by the wrongful act of another, but the judge delivering the opinion in the discussion of the case restated the doctrine of Baker v. Bolton, as sanctioned in Eden's case. (14 B. M., 204 [165].)

Had the injured party been the wife instead of the husband, then, certainly, he would have had the right at the

common law to have maintained an action for the loss of the society of his wife, although her personal representative might have sustained an action to recover damages for mental and physical suffering.

Had the wife survived her injuries she could have maintained her action for her mental and physical suffering. Had the husband sustained damages in consequence of his wife's injuries by the "loss of her society" then he could have also maintained his action to recover such damages. Had she lived he could not recover for her mental and physical suffering, because that was a damage to her, neither could she recover for his "loss of her society," because that was his damage.

Both causes of action existed at common law.

The action instituted by McElwain as personal representative was not based on a common law right, but to enforce a right secured by statute. This statute very much enlarged the rights which had existed at common law. It gave the personal representative the right to recover for the loss of the life, and thus increased many fold the amount which formerly could be recovered. The husband, under the statute (General Statutes) would take the entire amount recovered, subject to the debts of decedent. It was greatly to the advantage of the husband to enjoy the statutory rights instead of those which formerly existed, therefore it can not be said that the statute diminished the rights of the husband.

We can not believe that the General Assembly intended that the personal representative should maintain an action for the death of the wife, practically for the husband's benefit, and allow at the same time the husband to maintain one, on his own account, for the same acts or negligence.

In the Hansford case, in discussing the effect of a recov-

ery of punitive damages, under section 3, chapter 57, *supra*, the court said: "A recovery of punitive damages for the destruction of the life will certainly bar any other action for the injury or any of its consequences." It is the degree of negligence which determines whether the recovery should be compensatory or punitive, but when the action by the personal representative is based on section 1 of the statute in question the recovery should be as effectual a bar to any other action for the injury or any of its consequences as if the jury should have added punitive to the compensatory damages.

In Conner's Adm'x v. Paul, 12 Bush, 144, it appeared two actions were instituted by the personal representative of the deceased. The mother of deceased qualified as administratrix in Indiana, where the injury was inflicted, and also in Kentucky where the deceased lived.

As administratrix under her Kentucky appointment, she instituted an action to recover for the mental and physical suffering of deceased. As administratrix under the Indiana appointment she instituted an action to recover for the loss of life of her intestate.

The acts of negligence were the foundation of each action, and the court held a recovery in one action would bar a recovery in another action.

We conclude that as the statute gives the personal representative the right to maintain the action for the loss of life of the wife and the consequences of the negligent act producing the injury, the husband can not maintain the action for the loss of her society. The legislative intent was to increase the elements of damage flowing from the acts or negligence producing death. It was not the intention of the legislature to multiply actions. The husband

must accept the benefits which the statute secures him in lieu of those he possessed at common law.

Wherefore the judgment is reversed, with directions that further proceedings be had consistent with this opinion.