# Willett v. Bradas & Gheens, Inc., et al. (two cases).

June 21, 1940.

Burrell H. Farnsley, Judge.

526

Lukins & Jones and Raymond C. Stephenson for appellants.
Woodward, Dawson & Hobson for appellee.

OPINION OF THE COURT·BY JUDGE FULTON—Affirming.

The appellants, John S. Willett and his wife, Eliza Willett, were severely injured in a collision between their automobile and the automobile of appellee Bradas and Gheens, driven by the appellee Leo Grawemeyer, an employee of Bradas and Gheens. Mrs. Willett filed an action against Bradas and Gheens and Grawemeyer. Shortly thereafter, while Willett was still in a hospital, Grawemeyer filed an action against him. In this latter action Willett filed a counterclaim against Grawemeyer and a cross petition against Bradas and Gheens. The two actions were consolidated and tried together. A verdict was returned in behalf of Grawemeyer against Willett for $75 and a separate verdict was returned for the appellees in the action of Mrs. Willett against them and from judgments entered on these verdicts the present appeals are prosecuted.

The collision in controversy occurred slightly southwest of the center of the intersection of First and Burnett Streets in Louisville. Mr. and Mrs. Willett were driving east on Burnett Street and Grawemeyer was driving south on First Street. Mr. and Mrs. Willett testified that their car stopped before entering the intersection. Mrs. Willett testifies that she was sitting in the front seat of the car but was thrown into the rear seat by the force of the collision. She really knew nothing as to the manner in which the collision occurred. Mr. Willett testified that after stopping before entering the intersection he then drove out into the intersection approximately 7 feet and stopped again, at which point he looked and saw the other car approaching "awfully fast" with Grawemeyer not looking and that Grawemeyer's eyes were red. Grawemeyer testified that he was preparing to turn east on Burnett Street and that

Willett did not stop at the intersection but ran the car directly in front of him, whereupon he immediately applied his brakes and did everything in his power to stop' but could not do so. Grawemeyer's intention to make a left turn into Burnett appears very doubtful in view of the fact that the collision occurred south and west of the intersection center but, in any event, he had the right of way whether he was making a left turn or going straight through. Police officers testified that about 14 feet after Grawemeyer's car entered the intersection skid marks running directly south were on the street, these skid marks being approximately 7 feet in length. After the collision the cars wound up at the southeast corner of the intersection, the Willett car facing back in the direction in which it was traveling and the other car also being almost turned around. Several witnesses testified for appellants that the crash of the car was heard a square away. Both cars were damaged to the extent of about $200. The only eye witness besides the parties testified that he was driving north on First Street just south of Burnett at the time of the accident and saw both cars about 25 feet back of the building lines on the respective streets and that the Willett car was traveling about 15 miles per hour and did not stop before entering the intersection. Police officers who went to the hospital to interview Willett an hour or so after the accident state that Willett claimed he was not at fault and said "there wasn't any stop sign there." Considerable evidence was introduced to establish that Willett at that time did not know what he was saying or doing as a result of shock and concussion.

The first ground urged for reversal is error on the part of the trial court in refusing to discharge the jury on the return of the verdict. After retiring to the jury room the jury returned separate verdicts, one for $100 in favor of Grawemeyer against Willett and one for $300 in favor of Mrs. Willett against Grawemeyer and Bradas and Gheens. After consultation with counsel the court informed the jury that if they found for Mrs. Willett they could not find for Grawemeyer and the converse of this proposition, which, of course, was correct. The jury were instructed to return to the jury room and straighten the matter out, whereupon they retired and returned into court a verdict in favor of Grawemeyer against Willett for $75 but no verdict in Mrs. Willett's case. The court then explained to the jury that a ver-

dict would have to be made in that case also, whereupon the jury returned to the jury room and shortly returned a verdict in her case in favor of the appellees. The appellees then moved the court to ask the jury whether the last verdict rendered was in lieu of the verdict of $75 for Grawemeyer or was in addition to that verdict and the jury answered that the verdict for $75 for Grawemeyer should stand. Counsel for appellants merely argue that this situation showed that the jury was confused and that the verdict did not represent the jury's real view and should therefore be set aside. We have carefully examined all the remarks made by court or counsel to the jury concerning their duty in regard to the two cases and can find nothing prejudicial to the rights of appellants. The court was careful to make no comments on the case and merely explained the situation to the jury correctly to the effect that the verdicts were inconsistent. The record reveals that the jury finally understood the true situation and returned their verdicts accordingly. We see no error in the action of the trial court on this matter.

The next contention is that the verdict is not sustained by the evidence. In making this contention appellants rely on the physical facts as detailed in the evidence, their argument being that the location of the cars after the wreck, taken in connection with the facts that the crash was heard a square away and the amount of damage done to the cars, together with the fact that Mrs. Willett was found in the back seat of the car, all indicate that Grawemeyer was driving at a terrific rate of speed. We are not in accord with this argument since it appears to us that the cars came to rest at a point which would naturally and logically be expected, considering the direction in which they were moving at the time of the impact. Appellants argue that the Grawemeyer car knocked appellants' car from the center of the intersection to the southeast corner but no evidence is introduced to that effect and we see nothing unusual in the fact that the cars came to rest at that point; nor does the amount of damage done to the two cars, nor the fact that the crash was heard some distance away, serve to establish with any degree of certainty that Grawemeyer was driving at an excessive rate of speed. Appellants seek to have us draw inferences from the testimony which we do not feel we are justified in doing. This was the typical and usual intersection collision

and the evidence was conflicting. The jury was at liberty to believe either of the parties and their action in finding that Willett was in fault was amply justified.

In defining the duties of Grawemeyer the trial court instructed the jury that it was his duty to drive the car at a reasonable rate of speed. Section 2739g-51, Kentucky Statutes, provides that "no operator of a vehicle upon a public highway shall drive at a greater speed than is reasonable or proper, having regard for the traffic and the use of the highway." It is contended by appellant that the trial court should have instructed the jury that it was Grawemeyer's duty to drive at a reasonable rate of speed, *having regard for the traffic and the use of the highway,* and that the failure to instruct in the specific language of the statute was error. It must be admitted that where a statute prescribes a specific duty it is better practice to instruct in the language of the statute but in this particular case we can see no prejudicial error in the court's failure to do so. No unusual or extraordinary traffic conditions were shown by the evidence and we can hardly see how the jury could fail to understand that the court by the instruction given meant that Grawemeyer's speed must be reasonable under the conditions of traffic then existing and the use of the street at that point. It might be that in some cases where unusual conditions were established that it would be reversible error to fail to instruct on speed in the language of the statute but under the circumstances disclosed in evidence it appears to us that if error was committed by the trial court it was certainly not prejudicial to appellants' substantial rights.

As a part of the second instruction the trial court gave the instruction prepared by this court in the case of Woods v. Jaglowicz, 235 Ky. 637, 32 S. W. (2d) 1, in almost the identical words of the prepared instruction. It is contended that this instruction was erroneous as not including all the duties of Grawemeyer. There is no merit in this contention since this was not an instruction given in appellants' behalf but was given in behalf of Grawemeyer and merely specified duties imposed on Willett before entering the intersection, First Street being a boulevard and Willett being required to stop before entering it.

It is contended that the trial court erred in refusing to give an instruction of the type approved in Utilities

Appliance Co. v. Toons' Administrator, 241 Ky. 823, 45 S. W. (2d) 478, to the effect that the fact that Grawemeyer was driving in excess of twenty-five miles per hour (in a residence portion of the city) was prima facie evidence of unreasonable and improper driving. If there had been definite and specific evidence that Grawemeyer was driving at a speed of more than twenty-five miles per hour, it would have been the duty of the trial court, on appellants' motion, to give an instruction of the type mentioned, as modified in Nowak v. Joseph, 275 Ky. 470, 121 S. W. (2d) 939. In this case, however, the only evidence as to the speed of Grawemeyer's car was the statement of Willett that Grawemeyer was driving "awfully fast." No witness fixes the rate of speed being driven by Grawemeyer. Appellants argue, however, that the physical facts demonstrate that Grawemeyer must have been driving more than twenty-five miles per hour. We do not so construe the evidence and we think there is little doubt that the results following the collision might well have been attained with Grawemeyer driving less than twenty-five miles per hour. Appellants cite in support of their position, City of Catlettsburg v. Sutherland's Administrator, 261 Ky. 535, 88 S. W. (2d) 19; Thronton v. Phillips, 262 Ky. 346, 90 S. W. (2d) 347, and Kennedy Transfer Co. v. Greenfield's Adm'r, 248 Ky. 708, 59 S. W. (2d) 978. An examination of the opinions in the two former cases reveals that there was specific evidence of a rate of speed in excess of the statutory speed limit. In the last case, while the opinion does not disclose that there was specific evidence of a violation of the statutory speed limit, we have examined the record in that case and find that a witness testified that the truck involved was being operated at a speed of fifty or sixty miles per hour. Unless there is specific and definite evidence that the statutory speed limit is being violated, it is not proper, in the ordinary case for an instruction of this type to be given. It may possibly be that without specific evidence as to the rate of speed the physical facts proven might demonstrate conclusively that the statutory speed limit was being violated, a question not decided, but certainly that was not the case here and the trial court committed no error in refusing this instruction.

By instruction No. 8 the jury were told that if the Willett automobile appeared in the path of the car driven by Grawemeyer so suddenly and so near thereto

that had Grawemeyer been operating his automobile at a reasonable rate of speed he could not, by the exercise of ordinary care, have avoided the collision, the jury should find for appellees. It is contended by appellants that it was reversible error to give this instruction and in support of this contention they cite Dixon v. Stringer et al., 277 Ky. 347, 126 S. W. (2d) 448, in which we pointed out that in the usual case of this type this instruction was superfluous. There is little doubt that the instruction given was superfluous here since it merely presented in a different form instruction No. 2 given in favor of appellees as to the duties of Willett at the intersection. Further, by the giving of a last clear chance instruction, the effect of this so called sudden appearance instruction was in effect nullified since there was no direct evidence in the case, or evidence of physical facts, to establish that Grawemeyer saw, or by the exercise of ordinary care could have seen, Willett in time to have avoided the collision by the exercise of ordinary care. We are of the opinion that although error might have been committed in the giving of this instruction there was certainly nothing prejudicial about it under the circumstances disclosed in evidence.

The final contention is that the court erred in refusing to give an instruction requiring a warning signal. We see no merit in this contention since the collision took place at an intersection and it was Willett's duty to stop before entering the intersection and ascertain if cars were approaching either from his right or left. Were we to hold that warning signals must be given by cars on a boulevard approaching an intersection we would be establishing a rule which would promote a bedlam of noise and confusion in cities. The duties provided by law with reference to the duties of car drivers at intersections are sufficient to take care of this situation and dispense with warning under all ordinary conditions. We do not mean to say that circumstances might not be shown which would require a warning signal at intersections of this type but certainly the situation shown by the evidence did not impose on Grawemeyer the duty to sound a warning signal at the time in controversy or require a submission to the jury on this question.

On the whole we see no error committed to the prejudice of appellants' substantial rights.

Judgment affirmed.